**Rosa RIVERA, Plaintiff,**

v.

**HOSPITAL UNIVERSITARIO, et al., Defendants.**

**Civ. No. 90–1229 (JP).**

United States District Court,
D. Puerto Rico.

April 11, 1991.

Jorge F. Freyre, Goldman, Antonetti, Ferraiouli, Axtmayer & Hertell, Santurce, P.R., for plaintiff.

Sigfrid López González, Hato Rey Station, P.R., for defendants.

OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendants Dr. David Mehne's and Dr. Félix Santiago's Motion to Dismiss, and the plaintiff Rosa Rivera's Opposition thereto. The defendants have also filed a Reply to the Plain-

tiff's Opposition. Diversity jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

In September of 1988 the plaintiff underwent hip replacement surgery and further medical treatment at the University of Puerto Rico's "Hospital Universitario." Hospital Universitario, as part of the University of Puerto Rico, is thus an arm of the Commonwealth of Puerto Rico. The plaintiff alleges that she was a victim of medical malpractice committed by Dr. Mehne and Dr. Santiago. Dr. Mehne and Dr. Santiago are University of Puerto Rico medical professors who supervised the medical residents and treated patients at Hospital Universitario as "attending physicians". Attending Physicians are not the doctors of any one patient. Instead, Attending Physicians supervise the medical residents in whatever treatment is scheduled during the Attending's work hours.

The defendants assert that they are medical employees of the state and thus immune from liability under the law of Puerto Rico. The plaintiff contends that the doctors are independent contractors and not employees of the state entitled to immunity from suit.

As both the plaintiff and defendants have submitted documents for the Court's consideration outside of the pleadings the Motion to Dismiss shall be treated as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 12(c).[1] The defendant's Motion to Dismiss must be granted for the following reasons.

## I. SUMMARY JUDGMENT—STANDARD OF REVIEW

A motion for summary judgment is appropriate when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

**1.** Fed.R.Civ.P. 12(c) states that, "[i]f, on a motion for judgment on the pleadings, matters outside of the pleadings are presented to and not

Fed.R.Civ.P. 56(c). *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *see e.g., Medina–Muñoz v. R.J. Reynolds*, 896 F.2d 5 (1st Cir.1990). A "genuine" issue is one that is dispositive, and must therefore be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one which affects the outcome of the suit and must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d at 181.

■ Essentially, Rule 56(e) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the burden is first on the movant, to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2553. Thereafter, the burden shifts to the nonmovant to establish the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d at 191. The nonmovant, however, cannot rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56. In the instant case, there does not exist a genuine issue of material fact which must be decided at trial, thus the defendants' dispositive motion must be granted and judgment entered in favor of the defendants.

## II. INDEPENDENT CONTRACTORS VS. EMPLOYEES

The parties agree that medical employees of Hospital Universitario are immune from suit under 26 L.P.R.A. § 4105, which provides that:

> [n]o health service professional may be included as a defendant in a civil suit for damages due to malpractice caused in the performance of his profession while said health service professional acts in

---

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."

compliance with his duties and functions as an employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities and municipalities.

The plaintiff contends that this statutory immunity does not apply to defendants Dr. Mehne and Dr. Santiago because they are acting as "independent contractors" rather than employees. The plaintiff cites to cases in which the Puerto Rico Court has found defendants to be acting as independent contractors in a variety of contexts, (i.e. *Sierra Berdecía v. Pedro A. Pizá, Inc.*, 86 D.P.R. 445 (1962) (independent contractor existed in context of commissioned automobile sellers)). However, the plaintiff fails to make reference to the one case which directly considers the context of the medical profession. *Flores Román v. Ramos González*, 90 J.T.S. 132 (1990). *Flores Román* delineates the general factors which must be considered in the analysis of the independent contractor question, and the factors which specifically pertain to the medical profession context.

■ The question of whether an individual is an employee or an independent contractor must be analyzed on a case per case basis, as there is no precise definition for the term "independent contractor." *Mariani v. Christy*, 73 D.P.R. 783, 797 (1952). Thus no one factor alone is sufficient to establish an individual as an independent contractor. The general elements which must be examined by the Court are: 1) the form and manner of the employment contract concerning provisions of full-time or part-time employment; 2) whether the employment contract provides for vacation time, sick leave, or a retirement program; 3) the extent and nature of control the individual has over the execution of his duties; 4) the form of payment; and 5) the ownership status of equipment which is utilized. In addition, *Flores Román* provides that in the medical profession context, the Court must also examine the following factors: 1) whether professional malpractice insurance is paid for by the government; 2) whether the individual pays for the rent, water bill, electric bill or telephone bill of the treatment facility; 3) whether the patients were attended to at

the government hospital or at the individual doctor's own private practice office; and 4) whether the method of payment was by service rendered or on a salary basis.

■ In the instant case, Dr. Mehne and Dr. Santiago were both contracted as "Catedráticos Auxiliares" (Assistant Professors), and both worked on a part-time basis. Plaintiff's Opposition to Motion to Dismiss, Exhibits H & I (University of Puerto Rico Notification of Appointment as Assistant Professor) [hereinafter Opposition Exhibit]. Dr. Mehne worked approximately eight hours per week, and Dr. Santiago worked twenty hours per week. As part-time employees, both defendants were entitled to a number of employment benefits. Defendant's Reply to Plaintiff's Opposition to Our Motion to Dismiss, Exhibit 33 [hereinafter Reply Exhibit]. Both part-time and full-time employees are entitled to vacation time and sick leave, in proportion with the amount of hours worked per week. *Id.* In addition, part-time employees are entitled to: a ten percent library discount; participation in the retirement plan; unemployment insurance; a Christmas bonus; and free university enrollment. *Id.* Because Dr. Santiago worked a minimum of twenty (20) hours per week, he was automatically entitled to more benefits. Reply Exhibit 35, at 3. But Dr. Mehne could apply to receive the same benefits commensurate with his work schedule. *See* Opposition Exhibit B, at 24 (Mehne Deposition "Right, yes, I was paid for the fifty two (52) weeks of the year and I was getting my vacations"). Thus, their entitlement to vacation time, in addition to other benefits, would be a factor weighing in favor of deeming the defendants employees rather than independent contractors. *Sierra Berdecía v. Pedro A. Pizá, Inc.*, 86 D.P.R. 447, 456 (1962). In *Flores Román*, the independent contractors were not entitled to any of the benefits that the regular employees received.

As Assistant Professors and attending physicians, the defendants in effect maintained great control over the exercise of their own duties.

[T]he most important criteria in the determination of an employee status, *vel*

*non,* is the control the employer may have over the work performed, regardless of whether or not said control is exercised. It is the existence of the right or authority to so intervene or control on the part of the employer or principal that makes the other person an employee and not an independent contractor.

*Lugo v. Matthew Bender & Co., Inc.,* 579 F.Supp. 638, 642 (D.P.R.1984).

Therefore, the existence of medical faculty's authority to evaluate and control the work of the defendants, as evidenced by the following exhibits, is another factor which weighs in favor of considering the defendants employees rather than independent contractors. *See* Reply Exhibit 12, Dr. Mehne's Medical Faculty Reappraisal Form, Pledge to abide by the By Laws, Rules and Regulations of the Medical Staff, and Request for Privileges in Orthopaedic Surgery Procedures; Reply Exhibit 25, Dr. Santiago's Medical Faculty Reappraisal Form, Pledge to abide by the By Laws, Rules and Regulations of the Medical Staff, and Dr. Santiago Request for Privileges in Orthopaedic Surgery Procedures. Further support demonstrating the medical faculty's authority over the defendants is located in Opposition Exhibit B, at 54 (emphasis added), Dr. Mehne Deposition,

I'm sure that the only way that I could admit a private patient there [Hospital Universitario] and bill would be for me to be part of the intramural practice because my staff appointment there was to be a catedrático auxiliar, a professor, was [sic] through the Department of Orthopedics, *which means that everything had to go through the department.*

In addition, as Attending Physicians, the defendants were not the doctors of any one patient. Opposition Exhibit B, at 14 and 33. During their hours of hospital duty, the defendants supervised the residents on whatever operations were scheduled for those hours, as patients are only permitted to make appointments with the Orthopedic Clinic and not a specific doctor. Therefore the medical faculty's authority to evaluate and control the work of the defendants was, in actuality curtailed, by the supervisory nature of the defendants' work. Yet as previously noted, it is the existence of authority and not the actual exercise of authority which indicates that an individual is an employee and not an independent contractor. *Lugo v. Matthew Bender,* 579 F.Supp. at 642.

The manner in which the defendants were paid is also indicative of employee status rather than an independent contractor position. *Pérez v. Hato Rey Bldg. Co.,* 100 D.P.R. 882, 889 (1972). The defendants were paid on a salary basis and were required to fill out time sheets in order to be compensated. *See* Reply Exhibit 15, Dr. Mehne time sheets; Opposition Exhibit J, Dr. Santiago time sheets. Unlike the medical independent contractor in *Flores Román,* the defendants were not paid on the basis of how many patients they attended each day. Furthermore, the defendants were paid in the same manner in which the residents (who the parties agree are immune employees) were.

On the 8th floor of the building; [sic] the residents came in, it's all the same system, the residents signed their cards, we signed our cards, we're all employees of the same institution. Whenever we had a problem getting our pay, we had to go to the same office, same place, the fifth floor, wherever it was, and there's no distinction between me and the chief or a resident; the paycheck was the same—.

Opposition Exhibit B, at 27, Dr. Mehne Deposition.

Nor did the defendants own the medical equipment which they utilized, or contribute towards the payment of rent, water, electricity or telephone expenses of the University Hospital at which they attended to the hospital patients. None of the defendants' private practice patients were attended to at the University Hospital, as they were not part of the intramural practice, as discussed earlier. Opposition Exhibit B, at 54. All of these considerations lead to the conclusion that the defendants were employees of the University Hospital and not independent contractors.

The final factor to consider is whether the medical malpractice insurance premi-

ums are paid by the doctor or by the hospital. Reply Exhibit 6 (University of Puerto Rico insurance policy), indicates that in addition to purchasing Hospital Professional Liability Insurance, the University of Puerto Rico also purchases Physicians', Surgeons' and Dentists' Liability Insurance on behalf of its doctors. Although the plaintiff cites to an individual insurance policy that Dr. Santiago purchased as evidence that he was an independent contractor, Opposition Exhibit N, clearly indicates that the insurance policy covered Dr. Santiago's private practice operation and was not a part of his coverage as an Assistant Professor. The individual insurance policy incorporates the office address of Dr. Santiago's private practice, not his Hospital Universitario office address. Thus the final factor for the Court's consideration also weighs in favor of deeming the defendants employees rather than independent contractors.

## III. CONCLUSION

After a thorough review of the record, and consideration of all the factors which differentiate an employee from an independent contractor, the Court finds that both defendants, Dr. Mehne and Dr. Santiago are employees entitled to immunity from liability. Although these doctors in actuality were essentially free from direct supervision, it should be noted that independent judgment is inherent to the practice of medicine. Thus, not every medical doctor is an independent contractor merely because of the freedom from direct supervision which their profession entails.

In addition, the inclusion of temporary and part-time provisions in the Assistant Professor contract is a common practice of the medical profession, which addresses the profession's concern for providing medical treatment to the poor. As evident by Opposition Exhibit B, at 24 (Dr. Mehne deposition), the Assistant Professors at state teaching hospitals accept such part-time employment as a service to the community. It is not a position which greatly enriches the doctors monetarily, as the yearly contracts are viewed as a contribution to the community of indigent patients. Thus, the

temporal nature of Assistant Professor contracts is not comparable to the finite nature of independent contracts, which provide for the completion of a specific task and then terminate when the task is completed. The mission of Assistant Professors in indigent communities is never completed. Therefore, this Court's legal findings are supported by policy considerations that further society's interest in providing an incentive for doctors to donate their medical and teaching services to impoverished communities.

Wherefore, in view of the foregoing the defendants are found to be employees of Hospital Universitario and thus entitled to immunity from suit pursuant to 26 L.P.R.A. § 4105. Hence, the defendant's Motion to Dismiss is hereby GRANTED. Judgment shall be entered accordingly. The judgment against Dr. Mehne and Dr. Santiago will close this case, as partial judgment was entered on October 23, 1991 (docket entry no. 32) as to all the other defendants.